1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROL ANN LEROUX,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 17-cv-00452-SI

**ORDER REVERSING AND
REMANDING CASE FOR FURTHER
ADMINISTRATIVE PROCEEDINGS**

Re: Dkt. Nos. 12, 15

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Acting Commissioner of Social Security denying plaintiff's claim for supplemental security income benefits ("SSI"). The parties have filed cross-motions for summary judgment. Dkt. Nos. 12, 15. For the reasons stated below, the Court REVERSES the denial of SSI and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**BACKGROUND**

**I.    Administrative Proceedings**

In July 2012, plaintiff Carol Leroux filed an application for SSI under Title XVI of the Social Security Act, alleging a disability onset date of January 1, 2010. Administrative Record ("AR") at 18.[1] Her application was denied initially and on reconsideration. *Id.* at 180, 192. Plaintiff then requested a hearing before an ALJ. *Id.* at 198-200.

On March 17, 2015, ALJ Judson Scott conducted a hearing at which plaintiff was

_____

[1] Plaintiff later amended her alleged onset date of disability to July 19, 2012. AR at 47.

represented by counsel. On May 15, 2015, the ALJ denied plaintiff's application, finding that plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act. *Id.* at 15-31. The Appeals Council denied review on December 7, 2016, making the ALJ's decision the Commissioner's final decision. *Id.* at 1-3. On January 29, 2017, plaintiff commenced this action to seek judicial review pursuant to 42 U.S.C. § 405(g) on the grounds that the ALJ erred in denying SSI. Dkt. No. 1. Plaintiff filed a motion for summary judgment and defendant filed a cross-motion for summary judgment. Dkt. Nos. 12, 15.

## II. Medical History

At the time of the administrative hearing, plaintiff was fifty-one years old and unemployed.[2] Plaintiff was previously employed from 1999-2004 as an assistant manager of a housekeeping company. *Id.* at 432. In February 2006, she worked briefly as a stockperson. *Id.* Plaintiff completed a GED. *Id.* at 399.

Plaintiff has a history of anxiety, depression, chronic obstructive pulmonary disease ("COPD"), arthritis, Hepatitis C, and substance use. She has experienced shortness of breath since 1995 and uses three inhalers on a daily basis to control her COPD. *Id.* at 53-57, 603. Plaintiff was diagnosed with Hepatitis C in 1998. *Id.* at 571. Plaintiff complains of joint pain in her knuckles, elbows, knees, ankles, and lower back dating to about 2010. *Id.* at 603. Plaintiff has a history of high blood pressure beginning in 2010, which is mostly controlled with medication since July 2014. *Id.* at 21, 837. She also has erosive esophagitis, insomnia, and degenerative disc disease of the cervical spine. *Id.* at 21, 587, 829-30. Plaintiff had been diagnosed with panic disorder with agoraphobia, obsessive-compulsive disorder, and opioid dependence. *Id.* at 768.

## III. Medical and Vocational Evidence

Plaintiff's medical records include treatment notes and assessments from two practitioners: (1) Dr. Megha Miglani, M.D., plaintiff's treating psychiatrist, who provided assessments from

United States District Court
Northern District of California

---

[2] Plaintiff was forty-eight years old on the date that she applied for SSI. *See* AR at 30.

November 2013 and June 2014, and (2) Family Nurse Practitioner Annette Burns, plaintiff's primary care provider since June 2012, who provided assessments from February and September 2013. In addition to reviewing treatment records, the ALJ considered the opinions of five non-treating practitioners: Dr. Caroline Salvador-Moses, Psy.D., an examining consultative psychologist who examined plaintiff on November 27, 2012; Dr. Nina Kapitanski, M.D., an examining consultative psychiatrist who examined plaintiff on June 23, 2014; Dr. Ernest Bagner, M.D., an examining consultative psychiatrist who examined plaintiff on October 3, 2014; Dr. Daniel Wiseman, M.D., a non-examining physician who testified at plaintiff's hearing on March 17, 2015; and Dr. Miriam Sherman, M.D., a non-examining psychiatrist who testified at plaintiff's hearing.

### A.    Megha Miglani, M.D. (Treating Psychiatrist)

Dr. Megha Miglani completed an assessment of plaintiff on November 14, 2013. AR at 773. Dr. Miglani noted plaintiff's self-reported behaviors, including: depression and anxiety; compulsive behavior of scrubbing the shower for two hours daily before use; audio and visual hallucinations; repeated lock checking before leaving the apartment, resulting in thirty minutes of delay; and morning panic attacks. *Id.* Plaintiff reported that she had been sober from heroin for five months and was on methadone maintenance, smoked ten cigarettes daily, and drank a half pint of alcohol every other day. *Id.* at 773-74. Dr. Miglani diagnosed plaintiff with anxiety disorder NOS, depressive disorder NOS, and opioid dependence. *Id.* at 776.

On June 23, 2014, Dr. Miglani completed a Social Security psychiatric assessment. *See id.* at 947. In it, Dr. Miglani determined that plaintiff "has difficulty attending appointments and remaining in appointments due to severe anxiety, paranoia, agoraphobia; new situations such as traveling to unknown locations, meeting new people lead to exacerbation of symptoms." *Id.* at 948. Dr. Miglani assigned plaintiff a Global Assessment of Functioning ("GAF") score of 45 out of 100. *Id.* She found that plaintiff's symptoms would cause her to miss work five or more times per month; would cause plaintiff to need to work reduced hours five or more times per month; and that would require plaintiff to take unscheduled breaks during an eight hour shift. *Id.* at 949. Dr.

Miglani found plaintiff would be able to carry out very short and simple instructions and make simple work-related decisions 25% of the time. *Id.* at 950. Dr. Miglani concluded that plaintiff "will not be able to sustain gainful employment for at least the next 12 months as a direct result of the severity of her psychiatric symptoms, despite medication compliance." *Id.* at 951.

### B.  Annette Burns, FNP (Treating Family Nurse Practitioner)

Nurse Burns began treating plaintiff on June 12, 2012. *Id.* at 943. In February 2013, Nurse Burns completed an employability consultation for the San Francisco Department of Human Services. *Id.* at 954-55. She noted that plaintiff has severe asthma, poorly controlled, and Hepatitis C. *Id.* at 954. She concluded that plaintiff was "unemployable" because she "[h]as a Disabling Condition that will last/has lasted for 12 months or more and continues to exist . . . ." *Id.*

On September 17, 2013, Nurse Burns submitted a medical assessment for the plaintiff. *Id.* at 942. In the assessment, Nurse Burns listed seven diagnoses, including Hepatitis C, severe asthma, hypertension, alcohol abuse, opioid dependence, and low back pain.[3] *Id.* at 943. Nurse Burns assessed plaintiff's functioning as follows: able to stand for thirty minutes at a time and for one hour total in an eight hour day, able to walk for twenty minutes at a time and for forty minutes in an eight hour day, and able to sit for twenty minutes at a time and forty minutes in an eight hour day. *Id.* at 944. Nurse Burns determined that plaintiff could occasionally lift less than five pounds and could not bend, stoop, or climb due to back pain and arthritis. *Id.* Nurse Burns stated that plaintiff's impairments would cause her to be absent from work five or more times monthly and would cause her to need to work reduced hours on a daily basis. *Id.* at 945.

### C.  Caroline Salvador-Moses, Psy.D. (Examining Consultative Psychologist)

On November 27, 2012, Dr. Salvador-Moses, Psy.D. conducted a consultative psychological examination. *Id.* at 597. Plaintiff described symptoms similar to those that Dr.

---

[3] The Court is unable to read the seventh diagnosis that Nurse Burns listed. *See* AR at 943.

Miglani noted. Plaintiff reported depression, anxiety, obsession with cleanliness, visual hallucinations, agoraphobia, and insomnia. *Id.* Dr. Salvador-Moses conducted a series of tests, resulting in a finding that all areas of plaintiff's cognitive abilities, including verbal comprehension, perceptual reasoning, and working memory, were extremely low. *Id.* at 598. She assigned plaintiff a GAF score of 50. *Id.* at 599. Dr. Salvador-Moses reached the following conclusion, with the caveat that corroboration of plaintiff's self-reported history was recommended: that plaintiff

> shows moderate to severe impairment in her ability to understand and carry out simple instructions and tasks, and severe impairment as the instructions and tasks become more complex. . . . She demonstrates severe impairment in her concentration, pace, and persistence. She demonstrates severe impairment in her ability to interact appropriately with supervisors, co-workers, and the public.

*Id.* at 600.


### D. Nina Kapitanski, M.D. (Examining Consultative Psychiatrist)

On June 23, 2014, Dr. Kapitanski, M.D. conducted a consultative psychiatric evaluation on behalf of the Social Security Administration ("SSA"). *Id.* at 725. Dr. Kapitanski felt that plaintiff was "a fair historian." *Id.* Plaintiff reported depression, auditory and visual hallucinations, inability to "hold anything dirty[,]" and panic attacks. *Id.* at 725-26. Plaintiff reported heroin use that ended approximately one year prior, methadone use, drinking 2-3 servings of alcohol every other day, and smoking ten cigarettes per day. *Id.* at 726. Dr. Kapitanski assigned a GAF score of 50 and concluded that plaintiff "would have mild impairment understanding, remembering and carrying out simple or written instructions[,]" "moderate impairment in maintaining concentration, attendance and persistence[,]" "moderate impairment in performing activities within a schedule and maintain[ing] regular attendance[,]" and "moderate impairment in completing a normal workday/workweek . . . [or] responding to changes in a work setting." *Id.* at 729.


### E. Ernest Bagner, M.D. (Examining Consultative Psychiatrist)

Dr. Ernest Bagner, M.D. completed a consultative psychiatric evaluation on October 3,

United States District Court
Northern District of California

2014.  *Id.* at 800.  Plaintiff reported "difficulty falling asleep, depression, nervousness, panic attacks, low motivation, low energy and feelings of helplessness."  *Id.*  She also noted hearing "voices."  *Id.*  Dr. Bagner found plaintiff to be a poor historian.  *Id.*  Dr. Bagner assigned a GAF score of 65.  *Id.* at 803.  He found that plaintiff was not limited in her ability to follow simple, oral, and written instructions; was mildly limited in her ability to follow detailed instructions, to interact appropriately with the public, co-workers, and supervisors, or to respond to changes in a routine work setting; and was moderately limited in her ability to respond to work pressure in a usual work setting "due to nervousness and low motivation."  *Id.*  Dr. Bagner found that plaintiff's daily activities were mildly limited.  *Id.*

### F.     Daniel Wiseman, M.D. (Non-Examining Physician)

At the hearing on March 17, 2015, Dr. Wiseman, a pulmonologist, testified regarding plaintiff's physical impairments.   Dr. Wiseman considered plaintiff's pulmonary disorder, Hepatitis C, arthritis, and degenerative disc disease, concluding that these physical limitations alone and in combination would not meet or equal any listing.[4]  *Id.* at 74-92.  Dr. Wiseman stated that plaintiff's pulmonary disorder was "severe" but would not meet a listing.  *Id.* at 77.  With respect to plaintiff's Hepatitis C, Dr. Wiseman testified that plaintiff's viral load was high, which may cause her symptoms of fatigue and vomiting.  *Id.*  Dr. Wiseman testified that while plaintiff's imaging showed that she had liver damage and that it was a "significant problem," she would not meet a listing for it.  *Id.* at 78.  When asked about plaintiff's arthritis, Dr. Wiseman stated that

---

[4] Dr. Wiseman left open the possibility that plaintiff's physical ailments, in combination with her psychological conditions, might qualify plaintiff as disabled under a listing.  Specifically, Dr. Wiseman stated:

> Q: So based on what we have here, Doctor, does anything alone, or in combination meet or equal any listings?

> A: I don't think so.  I think the lifestyle she's come about because of all of these problems, in combination, may do it.  I'll let the psychological expert fill that other part in.  But she does have significant limitations that are physical in nature.

AR at 83.

"[i]t's just general. It's not specific." *Id.* at 78-79. Dr. Wiseman also noted that plaintiff has some degenerative disc disease. *Id.* at 79.

Dr. Wiseman then opined about plaintiff's physical limitations in light of her physical impairments. Dr. Wiseman found that plaintiff would have "significant limitations in her exertional ability. . . . Not sedentary, but very low in the limited, limited lifestyle . . . category." *Id.* at 83-84. Specifically, plaintiff could carry ten to twenty pounds, stand for fifteen to thirty minutes at a time and for a total of two hours during an eight hour work day, sit for eight hours in an eight hour work day with incremental breaks every thirty to sixty minutes, and walk for five to ten minutes but not continuously, for a total of one or two hours in an eight hour day. *Id.* at 84-86. As to postural limitations, Dr. Wiseman stated that plaintiff could not crawl, creep, climb stairs, or engage in activities that involve balance such as climbing ladders. *Id.* at 87. Other postural activities, such as stooping or climbing stairs with a handrail, could be done occasionally. *Id.* at 88. Dr. Wiseman did not find that plaintiff would have manipulative limitations but did state plaintiff should be precluded from working in environments with unprotected heights or hazardous machinery. *Id.* at 88-89. Dr. Wiseman testified that plaintiff should not be exposed to dust, inhalants, gases, fumes, and extreme hot and cold temperatures. *Id.* at 89-91.

### G.     Miriam Sherman, M.D. (Non-Examining Psychiatrist)

At the hearing, Dr. Sherman testified that if plaintiff stopped the substance abuse she would not meet the listings 12.04 (substance induced mood disorder) or 12.09 (substance addiction disorder). *Id.* at 99. Dr. Sherman also found that there were inconsistencies in the record with regard to plaintiff's drug use. Plaintiff testified that she had stopped using drugs approximately a year and a half before the hearing, in fall 2013. *Id.* at 47-48. Dr. Sherman noted that there was evidence, based on abscesses that plaintiff had drained in April and June 2014, that plaintiff's heroin use may have continued longer than plaintiff stated. *Id.* at 94. Dr. Sherman also noted that elsewhere in the record plaintiff reported her last use of heroin in February 2014 and last use of methadone on July 25, 2014. *Id.*

Dr. Sherman discussed listings 12.04, 12.06, and 12.09. She found that with the use of

substances, plaintiff had marked limitations in the Paragraph B criteria. *Id.* at 95. However, Dr. Sherman opined that "without substances, based on 14F-1, perhaps, which was October 2014, the restriction of activities of daily living are mild."[5] *Id.* at 95. Dr. Sherman testified that "without substances, it sounds as though the claimant can do, on a sedentary basis, simple, repetitive tasks and [moderately] complex tasks, non-public." *Id.* at 96. Dr. Sherman stated that plaintiff could have frequent contact with co-workers and supervisors. *Id.* at 97. Dr. Sherman stated that plaintiff could withstand ordinary work-related stress, "stay on task[,] and maintain ordinary workplace attendance" if plaintiff were to stop using substances. *Id.* at 97-98. However, with continued use of substances, plaintiff would have "marked" limitations in all categories. *Id.* at 98.

## LEGAL STANDARD

### I.  Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review. *See* 20 C.F.R. § 416.1481. This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both

_____

[5] Exhibit 14F refers to Dr. Bagner's assessment from October 2014.

evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

## II.     The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098. The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe?  If so, proceed to step three. If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work.  *Id.* §§ 404.1545(a)(4), 416.945(e).  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.*  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms.  *Id.*  When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her.  *Id.*  The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements.  *Id.* §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ must also consider factors relevant to

the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to step four and five of the disability inquiry.

### III. Drug Addiction and Alcoholism

If, considering all of the claimant's medically determinable impairments, there is a determination that the claimant is disabled, and there is medical evidence showing drug addiction and alcoholism ("DAA"), then the ALJ must determine whether the DAA is "material" to the finding that the claimant is disabled. 20 C.F.R. §§ 404.1535, 416.935. The Social Security Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then the claimant's DAA is not a material contributing factor to the determination of disability, and the claimant is disabled, independent of his or her DAA. *See id.* §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability. *Parra*, 481 F.3d at 745.

The Ninth Circuit has ruled that when a claimant has a history of drug or alcohol use, the ALJ must first determine the severity of the claimant's symptoms without attempting to filter out which impairments are related to the claimant's drug or alcohol use. *Bustamante*, 262 F.3d at 955.

If the ALJ determines that the claimant's impairments, including the impairments related to drug or alcohol use, are severe enough to be disabling, then the ALJ proceeds in assessing the materiality of the claimant's DAA, i.e. whether the claimant would still be found disabled if he or she stopped using drugs or alcohol. *Id*. (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* SSR 13-2p, 78 Fed. Reg. 11939, 11941 (Feb. 20, 2013).[6]

## ALJ DECISION

In determining whether plaintiff was disabled within the meaning of the Social Security Act, the ALJ applied the five-step disability inquiry set forth by 20 C.F.R. § 416.920(a). AR at 20-31. At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since July 19, 2012, the date plaintiff applied for SSI. *Id.* at 20. At step two, the ALJ determined that plaintiff had six severe impairments: degenerative disc disease of the lumbar spine, Hepatitis C, chronic bronchitis, polysubstance abuse, mood disorder, and anxiety disorder. *Id.*

At step three, the ALJ found that plaintiff's physical impairments were not severe functionally or durationally but that her mental impairments met the listings for 12.04 (substance induced mood disorder) and 12.09 (substance addiction disorder) when the ALJ included plaintiff's substance use.[7] *Id.* at 21. In particular, the ALJ considered whether the "paragraph A" and "paragraph B" criteria were satisfied. *Id.* at 21-22. The ALJ found that plaintiff was credible regarding her symptoms and limitations with regard to panic attacks, depression, auditory and visual hallucination, paranoia, anti-social behaviors, and decreased energy and concentration. *Id.* at 22. The ALJ noted that plaintiff tested positive for morphine, thus indicating heroin use, in August-December 2013 and January, February, April, and June 2014. The ALJ gave great weight

---

[6] Social Security Rulings in the Federal Register are published by the Commissioner of Social Security and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

[7] Effective January 17, 2017, the Social Security Administration removed listing 12.09 "because we cannot use listing 12.09 alone to meet our definition of disability." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66152 (Sept. 26, 2016) (to be codified at 20 C.F.R. pts. 404 & 416).

to the opinion of Dr. Salvador-Moses, "*when considering the effect of the claimant's substance abuse*[,]" and gave "the most probative weight" to the opinion of Dr. Sherman. *Id.* at 22-23. Thus, when considering the substance abuse, the ALJ found plaintiff was disabled. However, the ALJ concluded that plaintiff would not meet or equal the severity of the listings if the substance abuse stopped. *Id.* at 23. Therefore, the ALJ proceeded through the remainder of the five-step disability inquiry.

The ALJ determined that, if the substance use stopped, plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following modifications:

> sit eight of eight hours in 30 minutes increments; stand a total of two out of eight hours in 15 to 30 minute increments; walk one to two out of eight hours in five to 10 minutes increments and not continuously; occasionally stoop, crouch and kneel; never balance or crawl; never climb ladders, ropes or scaffolds; can climb one to two flights of stairs and ramps per day with the use of a handrail; no exposure to unprotected heights or hazardous moving machinery; no exposure to dust, gases or fumes above street levels of concentration; no exposure to extreme heat or cold; no close proximity to tobacco smoke; can perform simple repetitive through moderately complex tasks; frequent contact with co-workers and supervisors; no public contact; and can handle normal workplace stress.

*Id.* at 24.

The ALJ determined that although plaintiff's medically determinable impairments could be expected to cause some of the alleged symptoms, the objective medical evidence, plaintiff's daily activities, and plaintiff's substance abuse did not substantiate plaintiff's claims as to the intensity, persistence, or functionally limiting effects of these impairments. *Id.* at 25-26. In regard to plaintiff's physical health, the ALJ accorded the most probative weight to non-examining physician Dr. Wiseman's opinion because "it [is] well supported by the objective medical [evidence]." *Id.* at 29. As for plaintiff's mental health, the ALJ accorded the most probative weight to non-examining psychiatric expert Dr. Sherman's opinion because "it is well supported by the objective medical evidence that demonstrates an improvement in her mental health status when not engaging in substance abuse." *Id.* at 27. The ALJ accorded "very little weight" to Dr.

Miglani, no weight Nurse Burns, and "little weight" to plaintiff's roommate, who authored a third party functional report in November 2012. *Id.* at 27, 29.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. *Id.* at 29. At step five, the ALJ considered whether jobs existed that plaintiff could perform in the national economy. The ALJ noted that plaintiff was a "younger individual" on the date the application was filed, and at the time of the hearing was "closely approaching advanced age." *Id.* at 30. In light of plaintiff's age, education, work experience, RFC, transferable work skills, and the Medical-Vocational Guidelines, the ALJ determined that plaintiff could perform jobs that exist in significant numbers in the national economy. *Id.* The ALJ noted that even though plaintiff had additional limitations that did not allow her to perform the full range of light work, "a finding of 'not disabled' is appropriate . . . .." *Id.* at 31. The ALJ concluded that plaintiff's substance abuse was a "contributing factor material to the determination of disability." *Id.* Accordingly, the ALJ found plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues three grounds for reversal, stating that the ALJ erred by improperly weighing the opinions of Dr. Miglani, Nurse Burns, and plaintiff's roommate, Kevin Fletcher. Dkt. No. 12 at 5-9. Plaintiff asserts that the proper remedy for these errors is remand for further administrative proceedings. *Id.* at 10. Defendant asks the Court to affirm the ALJ's decision as supported by substantial evidence and free of reversible error. Dkt. No. 15 at 8.

### I.  Dr. Miglani

Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Generally, the opinion of a treating physician should be given greater weight than that of an examining or non-examining physician. *Id.* "The medical opinion of a claimant's treating physician is given

14

'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)).

Here, Dr. Megha Miglani was the only treating physician whose opinion the ALJ considered. The ALJ gave Dr. Miglani's opinion "very little weight" and favored instead the opinion of nonexamining psychiatrist Dr. Sherman, whose opinion the ALJ gave "the most probative weight." AR at 27. With regard to Dr. Miglani, the ALJ found as follows:

> Megha Miglani, M.D. authored a medical source stated [sic] in June 2014 (Ex. 18F). She opined that the severity of the claimant's mental health symptoms would cause her to miss more than five days of work per month[] (Id.). A GAF score of 45 was provided (Id.). This opinion is given very little weight because Dr. Miglani did not discuss the effect of the claimant's substance abuse on her functional abilities (Id.).

*Id.*

Plaintiff argues that the ALJ's decision to afford "very little weight" to Dr. Miglani's opinion was legal error and not supported by substantial evidence. Dkt. No. 12 at 8. In particular, plaintiff argues that the ALJ did not discuss all the limitations Dr. Miglani noted in her assessment and that the ALJ did not consider Dr. Miglani's November 2013 assessment, which did discuss plaintiff's substance use. *Id.* at 6-8. Defendant counters that the ALJ properly credited Dr. Sherman's opinion over Dr. Miglani's because, according to defendant, Dr. Miglani did not

consider the effect of substance use on plaintiff's functional abilities and Dr. Sherman did. Dkt. No. 15 at 3-6.

The parties agree that the ALJ may discount Dr. Miglani's opinion by "providing specific and legitimate reasons supported by substantial evidence." *See Ryan*, 528 F.3d at 1198. However, the Court finds the ALJ did not do so. The ALJ's rejection of Dr. Miglani's opinion is incomplete, is internally inconsistent with the ALJ's other findings, and is not supported by substantial evidence in the record.

Dr. Miglani authored assessments on November 14, 2013, and June 23, 2014, but the ALJ only cited the June 2014 assessment when deciding how much weight to give her opinion. *See* AR at 27, 773, 947. The November 2013 assessment expressly discussed substance use, and the ALJ cited to this assessment favorably elsewhere in his decision, when determining if plaintiff's "mental impairments" met the listings for 12.04 and 12.09. *See id.* at 21 (citing Ex. 13F, the November 2013 assessment, for evidence of plaintiff's restrictions in daily living, social functioning, and concentration, persistence, or pace), 22 (finding plaintiff "credible concerning the following symptoms and limitations[,]" including the limitations noted in the November 2013 assessment). The ALJ thus relied on Dr. Miglani's 2013 assessment in order to determine the materiality of plaintiff's substance abuse and then rejected her assessment from June 2014. The ALJ offered no explanation for this inconsistency. Additionally, the November 2013 assessment repeatedly refers to and discusses plaintiff's substance use. Thus, to the extent the ALJ reached his determination based on a belief that Dr. Miglani was unaware of plaintiff's substance use, that belief is mistaken. *See id.* at 773-74 (noting opiate dependence and methadone use and current alcohol use).

The weight afforded to Dr. Miglani is further confused by the ALJ's determination elsewhere in the decision that plaintiff was sober in June 2014. The ALJ cited June 2014 as a period of sobriety for plaintiff. The ALJ stated, "If the claimant *stopped the substance use*, the remaining limitations would not meet or medically equal the criteria of listings 12.04 or 12.06." *Id.* at 23. In support of this finding, the ALJ relied on consulting psychiatrists Dr. Kapitanski and Dr. Bagner:

> . . . the claimant would have mild restriction in activities of daily living if the substance use was stopped. In June 2014, she was able to care for her personal hygiene and do household chore[s] (Ex. 10F). In social functioning, the claimant would have moderate difficulties if the substance use was stopped. In June 2014, she was able to live in a rented room with two friends (Id). . . . With regard to concentration, persistence or pace, the claimant would have mild difficulties if the substance use was stopped. She was able to perform serial 3s in June and October 2014 (Exs. 10F, 14F).

*Id.* The ALJ thus pointed to June 2014 as evidence of plaintiff's abilities if the substance use stopped. Yet if plaintiff was sober in June 2014, then Dr. Miglani had no reason to account for substance use in the June 2014 assessment.

Importantly, the ALJ's finding that "Dr. Miglani did not discuss the effects of the claimant's substance abuse on her functional abilities" is misleading. *See id.* at 27. The ALJ considered Dr. Miglani's opinion in that portion of the decision in which he evaluated plaintiff's residual functional capacity if plaintiff stopped the substance use. The SSA psychiatric assessment that Dr. Miglani completed in June 2014 asked, "Disregarding any use of alcohol or illicit substances, if any, and assuming that the patient were placed in a competitive job position, what effect, if any, would the patient's other psychiatric impairments (in combination) have on his occupational functioning?" *Id.* at 948. The assessment further asked Dr. Miglani to assess plaintiff's functioning, with the instruction, "please do NOT consider the impact of substance abuse, if any." *Id.* at 949. Dr. Miglani responded to this question with the finding that plaintiff would be absent from work five times a month or more. *Id.* There is no support for the ALJ's disregard of Dr. Miglani's opinion on the basis that she did not consider the effect of substance use. Both the ALJ and Dr. Miglani were tasked with evaluating what was left of plaintiff's functioning without regard to substance use. Nothing in the June 2014 assessment indicates that Dr. Miglani did not do as instructed. Substantial evidence therefore does not support the ALJ's only stated reason for disfavoring Dr. Miglani's opinion.

In sum, the ALJ erred by discounting Dr. Miglani's opinion. On remand, the ALJ must re-weigh Dr. Miglani's opinion. If the ALJ again decides to give this opinion little weight, the ALJ must articulate specific and legitimate reasons, supported by substantial evidence, for doing so. The ALJ shall consider both the November 2013 and June 2014 assessments.

## II.    Nurse Burns

Plaintiff next argues that the ALJ improperly discounted the testimony of Family Nurse Practitioner Annette Burns.  Plaintiff states that Nurse Burns's opinion is entitled to weight because, even though she is not an "acceptable medical source," her opinion could still outweigh the opinion of an acceptable medical source.  Plaintiff argues that the ALJ committed legal error by "fail[ing] to acknowledge this distinction" and by not "fully consider[ing] the limitations assessed by Nurse Burns, by applying the factors for weighing opinion evidence[.]"  Dkt. No. 12 at 9 (citing 20 C.F.R. § 416.927(f)(1)).

At the time that plaintiff applied for SSI, "[n]urse practitioners [we]re considered 'other sources,'" rather than an "acceptable medical source."[8]  *See Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016) (citing 20 C.F.R. § 404.1513(a) & (d)(1)).  "The ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"  *Molina*, 674 F.3d at 1111 (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).  Such germane reasons may include a finding that the testimony conflicts with the witness's own earlier assessment or with the opinion of other medical specialists, or a finding that the witness was biased.  *Dale*, 823 F.3d at 944-45.

The regulations, however, allow for the ALJ to weigh the opinion of a nurse practitioner more heavily than the opinion from an acceptable medical source "[d]epending on the particular facts of the case, and after applying the factors for weighing opinion evidence[.]"  20 C.F.R. § 416.927(f)(1).  Social Security Ruling 06-03p elaborates.  Under that Ruling,

> . . . an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion.

---

[8]  The Social Security regulations have since changed, and for claims filed on or after March 27, 2017, a licensed advanced practice registered nurse is now an acceptable medical source.  20 C.F.R. § 416.902.

SSR 06-03p, 71 Fed. Reg. 45593, 45596 (Aug. 9, 2006).

SSR 06-03p provides a non-exhaustive list of "factors for considering opinion evidence" of medical sources who are not "acceptable medical sources." The factors include:

> • How long the source has known and how frequently the source has seen the individual;
>
> • How consistent the opinion is with other evidence;
>
> • The degree to which the source presents relevant evidence to support an opinion;
>
> • How well the source explains the opinion;
>
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
>
> • Any other factors that tend to support or refute the opinion.

*Id.* at 45595.

The record shows that Nurse Burns treated plaintiff since June 12, 2012, and was plaintiff's primary care provider  AR at 774, 943.  Nurse Burns completed assessments in February 2013 and September 2013. *Id.* at 942-43, 953.  In his decision, the ALJ stated:

> Annette Burns, FNP authored medical source opinions in February and September 2013 (Exs. 17F, 19F).  She opined that the claimant was disabled, as she was only capable of performing a substantially reduced range of sedentary work that would effectively preclude full-time employment (Id.).  These opinions are given no weight because she did not consider the effect of alcohol abuse when formulating her opinions (Id.).  Further, the level of the claimant's activities of daily living do not support such a restrictive functional capacity (Exs. 13F, 15F).  Moreover, nurse Burns is not an acceptable medical source.

*Id.* at 29.  Thus, the ALJ provided three reasons for rejecting Nurse Burns's assessments: (1) that Nurse Burns was not an acceptable medical source; (2) that Nurse Burns did not consider the effect of plaintiff's alcohol abuse; and (3) that plaintiff's daily activities did not support Nurse Burns's assessment of plaintiff's functional limitations. *Id.*

As an initial matter, the fact that Nurse Burns was not considered an "acceptable medical source" is not a germane reason to reject her opinion. As SSR 06-03p recognizes,

> medical sources . . . such as nurse practitioners . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not

> technically deemed ''acceptable medical sources'' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, 71 Fed. Reg. at 45596; *see also* SSR 13-2p, 78 Fed. Reg. at 11944 (recognizing the lack of any research data that can be used to reliably predict whether and to what extent a claimant's co-occurring mental disorder would improve absent the substance use and thus, suggesting that "other" medical sources, such as nurses, can be helpful for the ALJ in determining the materiality of DAA). The Court, therefore, finds that rejecting Nurse Burns's assessments because she is not an "acceptable medical source" is not a germane reason, and the ALJ should have evaluated her opinion in light of the facts of this case and the factors for weighing opinion testimony as described in SSR 06-03p. *See also Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014) (ALJ erred by failing to recognize that "nurse practitioner[] qualified as an 'other source' that can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work") (citing 20 C.F.R. § 404.1513(d)) (internal brackets omitted).

Second, as to Nurse Burns's consideration of plaintiff's alcohol abuse, it appears the ALJ erred in this respect. In the SSA Medical Assessment that Nurse Burns completed in September 2013, she listed "alcohol abuse" as part of plaintiff's diagnosis.[9] AR at 943. The assessment form, similar to that completed by Dr. Miglani, instructed Nurse Burns to assess plaintiff's functioning with the following instruction: "In making your inference, please disregard the impact of active substance abuse, if any." *See id.* at 944. Thus, to the extent the ALJ discounted Nurse Burns's opinion because she failed to separate out plaintiff's substance abuse, the record does not support the ALJ reaching such a conclusion. If, by contrast, what the ALJ intended was that Nurse Burns was not aware of plaintiff's alcohol abuse, that is clearly not so, where Nurse Burns diagnosed plaintiff with alcohol abuse, along with six other diagnoses, on that same assessment form. *See id.* at 943.

---

[9] Nurse Burns also noted opioid abuse as another diagnosis. A portion of that diagnosis is illegible to the Court. It is possible that it reads in full, "history of opioid abuse." *See* AR at 943.

Third, the ALJ did not provide germane reasons to support his assertion that plaintiff's daily activities contradict Nurse Burns's assessments. The ALJ cited generally to exhibits 13F and 15F. *Id.* at 29. Those exhibits are thirty-eight pages of medical records from South of Market Mental Heatlh and 118 pages of medical records from San Francisco General Hospital, respectively. The Court will not wade through these extensive records to try to identify whatever support the ALJ may have been referencing when he rejected Nurse Burns's opinion. Such speculation is not appropriate upon judicial review. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) ("meaningful review of an administrative decision requires access to the facts and reasons supporting that decision").

Defendant suggests that one of the ALJ's reasons was that plaintiff reported scrubbing her shower for two hours daily and spending half the day cleaning. Dkt. No. 15 at 7 (citing AR at 773, 789). The Court finds this is not a germane reason to reject Nurse Burns's opinion. The source of this information is Dr. Miglani, who ultimately concluded that plaintiff was disabled. Among plaintiff's self-reported behaviors were: "Reports compulsive behavior of scrubbing shower daily for 2 hours, prior to use; pt also scrubs bathroom in hotel[10] prior to using toilet and states that she spends 20 min - 2 hrs. Notes worries that if she does not clean bathroom, she will 'get sick' or 'be sitting on pee.'" AR at 773. The medical notes later state, "Notes ritualistic behaviors of cleaning 'half the day' and states she can not sleep if she has not cleaned." *Id.* at 789. In *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017), the Ninth Circuit found that the ALJ did not give germane reasons for rejecting a treating nurse practitioner's testimony, where the ALJ found the nurse's opinion conflicted with the claimant's daily activities of church attendance, grocery shopping, and TV watching. The appeals court explained that such activities "were not consistent with regularly attending a full-time job." *Popa*, 872 F.3d at 906-07. Likewise here, the Court agrees with plaintiff that the compulsive behavior of scrubbing her shower is not indicative of plaintiff's "residual functional capacity for work activity on a regular and continuing basis." *See* 20 C.F.R. § 416.945(b). The ALJ here failed even to identify which "activities of daily

---

[10] Plaintiff was living in a hotel at the time of this assessment. AR at 773.

living" did not support Nurse Burns's RFC finding, let alone explain how those activities impacted the RFC finding. *See* AR at 29. The Court therefore finds that the ALJ failed to provide germane reasons for rejecting Nurse Burns's opinion.

On remand, the ALJ shall weigh Nurse Burns's opinion in light of the factors for considering opinion evidence listed in SSR 06-03p. If the ALJ again decides to give Nurse Burns's opinion no or little weight, the ALJ must cite germane reasons for doing so. Such reasons must include enough detail that a reviewing court can identify why the ALJ reached such a conclusion and state specifically where in the record that conclusion finds support.

The Court notes that the only two sources—Dr. Miglani and Nurse Burns—who regularly treated plaintiff found plaintiff disabled. Yet the ALJ disregarded both of those opinions in favor of the opinions of doctors who either did not treat or did not examine plaintiff. *See Popa*, 872 F.3d at 907 (noting that the ALJ's decision to disregard nurse practitioner testimony "makes little sense" given that the nurse was the claimant's regular primary care medical provider for more than two years and no other medical professional in the record actually treated the claimant). This Court expresses no opinion as to the ultimate conclusion that the Social Security Administration should reach in this case. However, if the ALJ is to disregard the opinions of Dr. Miglani and Nurse Burns, the ALJ must do so in accordance with the applicable legal standards regarding the weight to be accorded their opinions.

## III. Mr. Fletcher

Finally, the Court finds that the ALJ committed error by not sufficiently supporting the weight given to the third party functional report by Kevin Fletcher, plaintiff's roommate.[11] Plaintiff argues that the ALJ committed legal error by failing to follow SSR 16-3p. Dkt. No. 12 at 9. Defendant argues SSR 16-3p does not apply because it has an effective date of March 28, 2016, and the ruling does not apply retroactively. Dkt. No. 15 at 7 n.3. Defendant further argues that the

---

[11] The ALJ decision refers to Mr. Fletcher as plaintiff's roommate, but at various places in the record plaintiff identifies him as her fiancé. *See, e.g.,* AR at 763.

ALJ provided germane reasons based on substantial evidence for rejecting Mr. Fletcher's report. *Id.* at 8.

SSR 16-3p states that "other sources," such as family and friends, "may provide information from which we may draw inferences and conclusions that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49465 (Oct. 25, 2017). "The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." *Id.* Plaintiff asserts that the ALJ committed legal error by its blanket rejection of Mr. Fletcher's testimony rather than by following the steps outlined in SSR 16-3p. Dkt. No. 12 at 9-10.

After the parties briefed this issue, the SSA re-published SSR 16-3p to resolve the very retroactivity question raised here. *See* SSR 16-3p, 82 Fed. Reg. at 49462. SSR 16-3p now "clarif[ies] that our adjudicators will apply SSR 16-3p when we make determinations and decisions on or after March 28, 2016. When a Federal court reviews our final decision in a claim, . . . we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review." *Id.* at 49462-63. Thus, defendant is correct that SSR 16-3p does not apply to the ALJ's decision dated May 15, 2015.

Nevertheless, the ALJ was still required to provide germane reasons for disregarding Mr. Fletcher's opinion. The Ninth Circuit has "held that competent lay witness testimony '*cannot* be disregarded without comment,' [citation,] and that in order to discount competent lay witness testimony, the ALJ 'must give reasons that are germane to each witness.'" *Molina*, 674 F.3d at 1114 (citations omitted); 20 C.F.R. § 416.913(d)(4). "Disregarding competent lay witness testimony without comment, therefore, constitutes 'legal error,' and it 'deprive[s] the Commissioner of substantial justification.'" *Tobeler v. Colvin*, 749 F.3d 830, 832-33 (9th Cir. 2014) (quoting *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir.1996)).

Here, the ALJ accorded Mr. Fletcher's report "little weight," stating as follows:

> Kevin Fletcher, claimant's roommate[,] authored a third party functional report in November 2012 (Ex. 8E). He said she could barely walk one block due to shortness of breath and requires

assistance with household chores and personal care (Id.). Mr. Fletcher indicated that the claimant has problems with lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs, using hands and completing tasks (Id.). . . . This statement has been given little weight, as it is a lay opinion based on casual observation, rather than objective medical examination and testing. Further, it is potentially influenced by loyalties of co-habitants. It certainly does not outweigh the accumulated medical evidence regarding the extent to which the claimant's impairments limit functional abilities.

AR at 29. The Court finds that the ALJ's stated reasons are not germane.

First, the ALJ rejected Mr. Fletcher's report because Mr. Fletcher's report was based on casual observation and not medical examinations or findings. *Id.* SSR 06-03p and the Social Security regulations, *see* 20 C.F.R. § 416.913, specifically allow "non-medical sources" to submit reports and testimony about the claimant. Therefore, the fact that Mr. Fletcher's report is based on casual observation and not medical examinations or medical findings is not in and of itself a "germane reason" to reject Mr. Fletcher's report. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Likewise, the ALJ may not, without further support, outright reject Mr. Fletcher's report on the grounds that "it is potentially influenced by loyalties of co-habitants." *See* AR at 29. The Ninth Circuit has held that rejection of a source solely because he or she is "an 'interested party' in the abstract" runs afoul of its precedent. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). "Such a broad rationale for rejection contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [their] condition.'" *Id.; see also Gutierrez v. Colvin*, 208 F. Supp. 3d 1117, 1123-25 (E.D. Cal. 2016) (finding ALJ erred by rejecting spouse's and mother's testimony on the basis of their relationship with the claimant and lack of medical training). If, however, there is "evidence that a specific spouse exaggerated a claimant's symptoms in order to get access to [their] disability benefits[,]" or the evidence demonstrates that the interested party "knows little about a claimant's functional capacity[,]" then rejection of the lay opinion may be warranted. *See Valentine*, 574 F.3d at 694. Here, however, the ALJ did not cite to any such evidence, nor has the Court found any in the record.

The ALJ also rejected Mr. Fletcher's report because it "did not outweigh the accumulated medical evidence." AR at 29. However, the ALJ did not identify which portions of the records contradicted Mr. Fletcher's observations. Mr. Fletcher's observations from November 2012 are consistent with those of the Nurse Burns, who was plaintiff's primary care provider during that period. For instance, Mr. Fletcher stated that plaintiff has problems lifting, squatting, bending, standing, reaching, walking, kneeling, climbing stairs. *Id.* at 29, 415. This is consistent with Nurse Burns's September 2013 assessment that plaintiff could stand for thirty minutes at one time (for a total of one hour in an eight hour day), walk twenty minutes at one time (for a total of forty minutes in an eight hour day), sit for twenty minutes at one time (for a total of forty minutes in an eight hour day), and occasionally lift less than five pounds. *See id.* at 944.

In *Gutierrez*, the court found that the ALJ erred by rejecting lay testimony as "not consistent with the record as a whole" where the ALJ cited only one inconsistency: that the lay witness indicated plaintiff could walk five feet, while plaintiff testified he could walk 100 meters. 208 F. Supp. 3d at 1125. The district court noted that these statements were not necessarily inconsistent, as the witness may have meant that plaintiff could walk only five feet without his cane. *Id.* Further, the ALJ erred by failing to resolve this conflict, and by rejecting an entire opinion on the basis of a single inconsistency. *Id.* ("the ALJ has a burden to resolve conflicting evidence") (citing *Morgan v. Comm'r*, 169 F.3d 595, 599-600 (9th Cir. 1999)). Germane reasons are even more lacking in this case, as the ALJ failed to cite any inconsistencies between Mr. Fletcher's opinion and the medical evidence. The Court therefore finds that the alleged inconsistency with "the accumulated medical evidence," without more detail, is not a germane reason for rejecting Mr. Fletcher's opinion.

The Court concludes that the ALJ erred by not providing germane reasons supported by substantial evidence to reject Mr. Fletcher's report. On remand, the ALJ must re-weigh Mr. Fletcher's opinion and, if the ALJ accords the opinion little weight, must do so by identifying germane reasons supported by substantial evidence in the record. Mr. Fletcher's lack of medical training is not a germane reason to reject his testimony; nor does his status as plaintiff's roommate/fiancé, without more, justify disregarding his opinion. Although SSR 16-3p did not

apply to the ALJ's 2015 decision in this case, the SSA has stated, "If a court remands a claim for further proceedings after the applicable date of the ruling (March 28, 2016), we will apply SSR 16-3p to the entire period in the decision we make after the court's remand." SSR 16-3p, 82 Fed. Reg. at 49463. On remand, therefore, the ALJ shall follow SSR 16-3p when evaluating Mr. Fletcher's opinion. This includes evaluating Mr. Fletcher's observations "in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." *Id.* at 49465.

In sum, the ALJ failed to provide proper reasons for discounting the opinions of Dr. Miglani, Nurse Burns, and Kevin Fletcher. Plaintiff suggests that, if the Court grants her motion for summary judgment, the appropriate remedy is remand for a further administrative hearing. Dkt. No. 12 at 1. The Court agrees. The Court will "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Accordingly, the Court will remand plaintiff's claim for further proceedings, consistent with this Order. On remand, the ALJ should reevaluate the RFC finding in light of the Court's reversal regarding the above medical opinions from Dr. Miglani and Nurse Burns and the non-medical source, Mr. Fletcher. From there, the ALJ should reevaluate the remaining steps of the disability inquiry, in light of any change in the RFC finding.


## CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.


**IT IS SO ORDERED**.

Dated: March 12, 2018

_____
SUSAN ILLSTON
United States District Judge